**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | |
|---|---|
| D.W., an individual;<br><br>Plaintiff,<br><br>-against-<br><br>G6 HOSPITALITY, LLC; G6 HOSPTALITY IP, LLC; G6 HOSPITALITY PROPERTY, LLC; G6 HOSPITALITY PURCHASING, LLC; G6 HOSPITALITY FRANCHISING, LLC; MOTEL 6 OPERATING, L.P.; and JAY RAM LLC.<br><br>Defendants. | CIVIL ACTION NO:<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW, Plaintiff, D.W. (hereinafter, "Plaintiff"), by and through the undersigned counsel, and respectfully submits her Complaint for damages and makes the following averments.

## INTRODUCTION

1. Plaintiff, a victim and survivor of sex trafficking, brings this action for damages under 18 U.S.C. § 1595, the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA").

2. The TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. *See* 18 U.S.C. § 1591.

3. The TVPRA permits victims and survivors of sex trafficking, including Plaintiff, to pursue a civil remedy against her trafficker or entities who financial benefit from the sex trafficking, referred to as a beneficiary claim. *See* 18 U.S.C. § 1595(a).

4. A beneficiary claim under the TVPRA is a claim against a civil entity who did not directly violate Section 1591, but who "knowingly benefit[ted], or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." *Id.*

5. Plaintiff brings a beneficiary claim under the TVPRA against Defendants, G6 Hospitality, LLC; G6 Hospitality IP, LLC; G6 Hospitality Property, LLC; G6 Hospitality Purchasing, LLC; G6 Hospitality Franchising, LLC; Motel 6 Operating, L.P., (collectively referred to as the "G6 Defendants"); and Jay Ram LLC (referred to as "Franchisee Defendant") who, upon information and belief, owned, operated, jointly operated, controlled, managed and supervised the Motel 6 Portland, Oregon – Southeast (hereinafter, the "Subject Motel 6") located at 4512 Southeast 82nd Avenue, Portland, Oregon 97266, and were responsible for the Subject Motel 6 at all relevant times. Collectively and where appropriate, Defendants as a whole will be referred to as "Defendants".

6. Plaintiff is a sex trafficking victim under the TVPRA as she was induced by force, fraud or coercion by her trafficker to engage in sex acts with buyers at the Subject Motel 6 from approximately August 2015 until on or after July 4, 2016.

7. Defendants, in violation of 18 U.S.C. § 1595, knowingly benefited financially from a venture that they knew, or at the very least should have known, to be engaged in the sex trafficking of Plaintiff in violation of 18 U.S.C. § 1591(a).

8. As a direct and proximate result of Plaintiff'sex trafficking at the Subject Motel 6, Plaintiff was sexually exploited and repeatedly and brutally victimized at Subject Motel 6 in violation of 18 U.S.C. § 1591(a).

## PARTIES

9. Plaintiff, herein, identified by her initials D.W., pursues this claims under a pseudonym to protect her identity, privacy and safety, as have similarly situated plainitffs who have filed claims in this Court anonymously under the same federal statute.

10. Plaintiff is a resident and citizen of Oklahoma, County of Texas.

11. Defendant, G6 Hospitality, LLC, is a Delaware limited liability company with its principle place of business located in Carrollton, Texas.

12. Defendant, G6 Hospitality IP, LLC, is a Delaware limited liability company with its principle place of business located in Carrollton, Texas.

13. Defendant, G6 Hospitality Property, LLC, is a Delaware limited liability company with its principle place of business located in Carrollton, Texas.

14. Defendant, G6 Hospitality Purchasing, LLC, is a Delaware limited liability company with its principle place of business located in Carrollton, Texas.

15. Defendant, G6 Hospitality Franchising, LLC, is a Delaware limited liability company with its principle place of business located in Carrollton, Texas.

16. Defendant, Motel 6 Operating, L.P., is a Delaware limited partnership with its principle place of business located in Carrollton, Texas.

17. Defendant, Jay Ram LLC is, upon information and belief, a for-profit limited liability company organized under the laws of the State of Oregon with its principle place of business located in Portland, Oregon.

18. Upon information and belief, Defendant Jay Ram, LLC owned, operated, controlled, and/or managed the Subject Motel 6 through the G6 Defendants' franchising system during the period in which Plaintiff was trafficked.

19. Defendants are hospitality companies that, at the time of the incidents alleged herein, directly and through its agents, affiliates, and subsidiaries, offer public lodging services at motels under the G6 Hospitality brand, including the Subject Motel 6 where Plaintiff was trafficked.

20. As hotel owners and operators, Defendants control the training and policies for its brand motels, including the Subject Motel 6 where Plaintiff was trafficked. Defendants maintain that it considers guest safety and security to be important, and requires the brand motels in its portfolio to comply with Defendants brand standards and all local, state, and federal laws.

21. Defendants own, operate, jointly operate, control, manage and supervise the Subject Motel 6 located at 4512 Southeast 82nd Avenue, Portland, Oregon 97266.

22. Defendants knowingly benefited, or received something of value from its facilitation of, or participation in, the sex trafficking venture by receiving the gross room revenue from the money generated by the operations of the Subject Motel 6, including a percentage of the revenue generated for the rate charged on the motel rooms in which Plaintiff was sex trafficked in.

23. Defendants knew or should have known Plaintiff and her trafficker engaged in acts in violation of 18 U.S.C. § 1591(a) as a result of open and obvious signs of sex trafficking present on the Subject Motel 6 property when Plaintiff and her trafficker booked rooms at the Subject Motel 6.

24. Whenever reference is made in this Complaint to any act, deed or conduct of the Defendants, the allegation is that the Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was

actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendants.

**JURISDICTION AND VENUE**

25. This Honorable Court has original jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Constitution, laws, or treaties of the United States, based upon federal claims asserted pursuant to 18 U.S.C. § 1595.

26. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because at least one Defendant is a resident the Eastern District of Texas and a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendants' misconduct and omissions, occurred in the judicial district where this action is brought.

27. Venue is proper within this District Court as this District Court is a judicial district where Defendants are subject to personal jurisdiction in accordance with 28 U.S.C. § 1391(b)(2), as well as the Texas Long-Arm statute.

28. G6 Hospitality, LLC, G6 Hospitality IP, LLC, G6 Hospitality Property, LLC, G6 Hospitality Purchasing, LLC, G6 Hospitality Franchising, LLC, and Motel 6 Operating, L.P. have the same principal place of business, which is in Carrollton, Texas, within the Eastern District of Texas. Therefore, each is a resident of the Eastern District of Texas for the purpose of § 1391(b)(1).

29. Franchisee Defendant Jay Ram LLC is an entity that, pursuant to 28 U.S.C. § 1391(c)(2), is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction with respect to the civil action in question. As set forth herein, Franchisee Defendant is subject to personal jurisdiction in the Eastern District of Texas by virtue of its

purposeful contacts with Texas and with this District through the G6 franchising venture under the Texas Long-Arm statute.

30. Accordingly, this Court can exercise personal jurisdiction over all Defendants as a result of Defendants either being residents and citizens of Texas, or subject to personal jurisdiction pursuant to the Texas Long-Arm statute.

31. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim — including the franchising agreement between Franchisee Defendant and the G6 Defendants pursuant to which the Subject Motel 6 was operated — occurred, in substantial part, in Texas and in the Eastern District of Texas.

32. Plaintiff's claims against Franchisee Defendant arise out of Franchisee Defendant's contacts with Texas through Franchisee Defendant's relationship with the G6 Defendants, which have their principal place of business in the Eastern District of Texas.

33. Franchisee Defendant's franchise agreement with the G6 Defendants operating the Subject Motel 6 occurred, in substantial part, in Texas because:

a. on information and belief, Franchisee Defendant actively sought out a franchising relationship with G6 Defendants in Texas;

b. on information and belief, Franchisee Defendant acknowledged that the negotiation, execution, and acceptance of the franchising agreements occurred in the Eastern District of Texas;

c. on information and belief, Franchisee Defendant agreed that its ongoing performance of the franchising agreement would take place, in part, in the Eastern District of Texas;

d. on information and belief, the franchising agreements had a choice of law provision selecting the law of Texas as the governing law;

e. on information and belief, the franchising agreements required Franchisee Defendant to report information to the G6 Defendants in Texas, including information about all incidents involving safety, security, public relations, or serious injuries to persons or property that occur at, or involve, the Subject Motel 6, including those involving sex trafficking victims, including Plaintiff;

f. on information and belief, Franchisee Defendant agreed to submit all notices required under the franchising agreement to the G6 Defendants in the Eastern District of Texas;

g. on information and belief, Franchisee Defendant was required to attend training and meetings in Texas;

h. on information and belief, the G6 Defendants dictated policies related to safety, security, human trafficking, employee training and Franchisee's response, as well as other subjects from their principal place of business in the Eastern District of Texas;

i. on information and belief, Franchisee Defendant had an ongoing obligation to participate in centralized programs operated by the G6 Defendants from their principal place of business in the Eastern District of Texas;

j. on information and belief, Franchisee Defendant was required to purchase insurance on behalf of one or more of the G6 Defendants;

k. on information and belief, reservation information for rooms at the Subject Motel 6 was processed through a system operated and managed by the G6 Defendants from its principal place of business in Texas;

l. on information and belief, payment information for rooms at the Subject Motel 6 was processed through a system operated and managed by the G6 Defendants from its principal place of business in Texas;

m. on information and belief, the benefit that Franchisee Defendant received from room rentals was governed by the franchising agreement, executed in Texas;

n. on information and belief, Franchisee Defendant agreed to make all payments due under the franchising agreement to the G6 Defendants at their principal place of business in the Eastern District of Texas;

o. on information and belief, Franchisee Defendant's operation of the Subject Motel 6 was controlled and/or influenced by policies set and enforced by the G6 Defendants from their principal place of business in Carrollton, Texas;

p. on information and belief, Franchisee Defendant signed a software licensing agreement with the G6 Defendants for the property management software the G6 Defendants required Franchisee Defendant to use when operating the Subject Motel 6, including, but not limited to, when booking rooms at the motel and processing payment for those rooms; and

q. on information and belief, Franchisee Defendant agreed to file any lawsuit arising from the licensing agreement in the Eastern District of Texas and

waived personal jurisdiction and venue objections.

34. Defendants have consensually submitted to the jurisdiction Texas and have purposefully availed themselves of the privilege of conducting acts in Texas through Defendants' dominion and control over their respective brands, day-to-day operation of their motels, and, thus, invoking the benefits and protections of the laws in Texas; Texas has an equally strong interest in protecting and assuring the safety of persons within its State.

## SEX TRAFFICKING UNDER FEDERAL LAW

35. Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act." *See* 22 U.S.C. § 7102(12).

36. Commercial sex act is defined by the TVPRA under 22 U.S.C. § 7102, as "any sex act on account of which anything of value is given to or received by any person." *See* 22 U.S.C. § 7102(4).

37. Under 18 U.S.C. § 1591, "whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)" is in violation of this chapter, which includes commercial sex acts. *See* 18 U.S.C. § 1591(a)(2).

38. Under 18 U.S.C. § 1595, "an individual who is a victim of a violation of this chaper may bring a civil action against the perpetrator or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." *See* 18 U.S.C. § 1595(a).

## FACTUAL ALLEGATIONS

### A. THE HOTEL INDUSTRY'S PARTICIPATION IN THE SEX TRAFFICKING INDUSTRY

39. "75% of survivors in the Polaris survey reported coming into contact with hotels at some point during their trafficking situation." Unfortunately, "94% of Polaris survey respondents disclosed they never received any assistance, concern, or identification from hotel staff."[1]

40. Hotels are a common location for sex trafficking to occur and the hotel industry, including Defendants, have a legal obligation not to financially benefit from sex trafficking occurring on their properties, including the Subject Motel 6.

41. Upon information and belief, reports by The Polaris Project of sex trafficking at hotels and motels were received and reviewed by the executives, directors and managers of Defendants prior to and during the 2015 time period.

42. Upon information and belief, other publically available information regarding sex trafficking in hotels and motels was received and reviewed by Defendants prior to and during the 2015 time period.

43. Upon information and belief, prior to 2015, Defendants held meetings among their executives, directors and managers at which sex trafficking in motels owned and operated by Defendants was discussed, including the Subject Motel 6.

44. Upon information and belief, prior to 2015, emails were exchanged by employees of Defendants that related to sex trafficking in motels owned and operated by Defendants, including the Subject Motel 6.

45. Due to the complacency of Defendants in addressing the issue of sex trafficking,

---

[1] *Recommendations for Hotels and Motels*, THE POLARIS PROJECT, https://polarisproject.org/hotels-motels-recommendations (last visited June 1, 2026).

hotels are the venue of choice for sex trafficking.[2]

46. Defendants, prior to 2015, knew or should have known, that motels/hotels are the top-reported venue where sex trafficking acts occur.

47. Defendants knew or should have known that sex trafficking was taking place prior to 2015 at motels owned and operated by Defendants, including the Subject Motel 6.

48. Defendants knew or should have known that trafficker used its motels, including the Subject Motel 6, as hubs of operations. Inside, victims, including Plaintiff, were harbored, raped, assaulted, and forced to service buyers who came to the motel solely to purchase sex.

49. Prior to 2015, Plaintiff's trafficker rented motel rooms, including rooms rented at the Subject Motel 6, due to each Defendants' failures and/or refusals to adopt and enforce companywide anti-trafficking policies, train staff on what to look for and how to respond, and/or establish safe and secure reporting mechanisms for those at the point of sale.

50. Due to this link between hotels and sex trafficking, significant efforts have been made to educate the hotel industry on industry best practices for identifying and guarding against sex treafficking on their properties.

51. Numerous organizations and agencies, including the Polaris Project, have published recommendations to the hotel industry to combat sex trafficking in hotels and motels, including adoption of a company-wide anti-trafficking policy, training hotel staff on signs and indicators of sex trafficking, establishing a response plan for reporting sex trafficking, to name a few.[3]

52. Upon information and belief, prior to 2015, despite a duty to do so, Defendants took inadequate measures to prevent sex trafficking at its brand motels, including the Subject

---

[2] *Hotels Initiative*, THE POLARIS PROJECT, https://polarisproject.org/initiatives/hotels (last visited June 1, 2026).
[3] *Id.; Recommendations for Hotels and Motels*, THE POLARIS PROJECT, https://polarisproject.org/hotels-motels-recommendations (last visited June 1, 2026).

Motel 6, and profiting from sex trafficking at motels owned and operated by Defendants.

53. Upon information and belief, prior to 2015, Defendants, through its employees, including executives, directors and managers, knowingly failed to take measures to prevent sex trafficking at its brand motels or profiting from sex trafficking at its brand motels, including the Subject Motel 6.

54. Upon information and belief, prior to 2015, Defendants, through their employees, including executives, directors and managers, decided not to take any measures to prevent sex trafficking at at its brand motels, including the Subject Motel 6, in order to conceal the fact that sex trafficking was occurring at their brand motels.

55. Upon information and belief, prior to 2015, Defendants received information indicating that sex trafficking had occurred at its brand motels, including the Subject Motel 6.

56. Upon information and belief, prior to 2015, Defendants received information from media reports and/or law enforcement indicating that sex trafficking had occurred at its brand motels, including the Subject Motel 6.

57. At all relevant times, Defendants had the financial resources to train motel staff to identify the signs of sex trafficking.

58. At all relevant times, Defendants continued to generate revenue from room rentals where sex trafficking occurred while failing to take steps to identify and guard against sex trafficking occurring on Defendants' motels, including the Subject Motel 6.

59. At all relevant times, Defendants had the authority to require that training of motel staff to identify the signs of sex trafficking take place at its brand motels, including the Subject Motel 6.

60. From check-in to check-out, there are a number of indicators that a trafficker and

his victims exhibit during their stay at a motel. With proper training and the implementation of reasonable security measures, Defendants could have identified and prevented sex trafficking under its respective brand flag.

61. Obvious signs of sex trafficking at Defendants' brand motels include: 1) significant foot traffic in and out of room(s) who are not the individuals who rented the room; 2) noise disturbances; 3) men checking in with multiple women who appear unrelated; 4) women displaying physical injuries or signs of fear and anxiety; 5) declining room service for several consecutive days; 6) women known to be staying in rooms without leaving; 7) guests checking in with little or no luggage; 8) motel guests who prevent another individual from speaking for themselves; 9) renting multiple rooms next door to each other; 10) guests checking in with little or no luggage; and 11) motel guests who prevent another individual from speaking for themselves.[4]

62. Defendants' staff at the Motel 6 observed many signs of sex trafficking at the Motel 6 and either failed to act or were affirmatively complicit in the sex trafficking of Plaintiff.

63. The hotel industry, including Defendants, have been cognizant of their role and responsibilities in the sex trafficking industry for years.

64. Further, nationwide campaigns that Defendants were the target of, and subject to, recognized the issue of human trafficking for commercial sex in the hotel industry and the lack of internal policies to address the issue, and took initiative as early as 1997 with the United Nations Blue Heart Campaign and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[5] These efforts sought to educate both the public and private sectors on

---

[4] *Id. See also*, Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, THE INSTITUTE TO ADDRESS CRIMINAL SEXUAL EXPLOITATION, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf (last visited June 1, 2026).

[5] *DHS Blue Campaign Five Year Milestone*, DEPARTMENT OF HOMELAND SECURITY, https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone (last visited June 1, 2026).

identifying and combatting human trafficking for commercial sex, including the hospitality industry and both campaigns released online resources and toolkits publicly accessible to any entity concerned with human trafficking for commercial sex.[6]

65. The presence of sex trafficking and exploitation in motels is an obvious occurrence and although unutilized, underutilized, or ineffectively utilized, numerous well-researched trainings and toolkits have been published for the hotel industry over the last decade to help hotel staff in every position to identify the signs.

66. Defendants have been aware of and monitored the anti-trafficking activities of the hospitality industry as a whole and that of specific competitors, including those discussed above prior to 2015.

67. For years, including prior to 2015, Defendants have participated in meetings and discussions with competitors and others in the hospitality industry about the prevalence of human trafficking for commercial sex in its brand motels and the most effective means in which that sex trafficking could be stopped.

68. Despite its knowledge of sex trafficking in its brand motels and efforts undertaken or laid out by others to stop such trafficking, Defendants did nothing to stop the sex trafficking at its brand motels, including the Subject Motel 6.

69. When Defendants eventually began to adopt policies and public statements to combat sex trafficking, it did so in appearance only but utterly lacking in substance.

## B. THE DEFENDANTS' WILLFUL BLINDNESS TO SEX TRAFFICKING AT THEIR BRANDED HOTELS

70. Defendants have been on notice of repeated incidences of sex trafficking

---

[6] *Human Trafficking and the Hospitality Industry*, DEPARTMENT OF HOMELAND SECURITY, https://www.dhs.gov/blue-campaign/hospitalityindustry (last visited June 1, 2026).

occurring across their brand motels, including the Subject Motel 6, prior to 2015, yet Defendants failed to take the necessary action to prevent sex trafficking at their brand motels.

71. Numerous news stories and articles of sex trafficking occurring at motels owned and operated by Defendants were available to Defendants and put Defendants on notice of sex trafficking occurring at motels they owned, including the Motel 6, as referenced below.

72. Upon information and belief, Defendants knew or should have known about the widespread trafficking at the Subject Motel 6 based on:

a. the obligation of hotel staff and hotel management to report suspected criminal activity including sex trafficking to the G6 Defendants;
b. the Defendants' collection and monitoring of customer surveys and complaints;
c. the Defendants' regular inspections of the hotel property;
d. information provided to Defendants by law enforcement; and
e. other sources of information available to Defendants.

73. The staff at the Subject Motel 6 knew or should have known about the widespread trafficking at the property which is imputed to Defendants.

74. Defendants:

a. Defendants control, own, supervise, and operate the Subject Motel 6 located at 4512 Souteast 82nd Avenue, Portland, Oregon 97266.
b. Defendants failed to implement and enforce any of their own policies relating to sex trafficking in their brand motels, including the Motel 6, and protect Plaintiff from being trafficked at the Motel 6.
c. Founded in 1962, Defendants represents that they have more than sixty years

of experience in managing successful brands. From all of their motel 6 properties, Defendants receive an application fee, a lump sum payment, royalties, and other ongoing financial benefits.

d. Defendants knew or should have known that the Subject Motel 6 where Plaintiff was trafficked for commercial sex was in an area known for a high incidence of crime and prone to sex trafficking activity on and around the motel premises, including when Plaintiff was trafficked.

e. Despite having knowledge of the extensive prostitution and sex trafficking that occurs at motels and specifically their motels, Defendants have repeatedly failed to thwart these activities.

f. Defendants can exercise control over the Subject Motel 6 by:

   i. distributing information to assist employees in identifying human trafficking;

   ii. providing a process for escalating human trafficking concerns within the organization;

   iii. requiring all employees to attend training related to human trafficking;

   iv. providing new hire orientation on human rights and corporate responsibility;

   v. providing training and education to all Motel 6 motels through webinars, seminars, conferences, and online portals;

   vi. developing and holding ongoing training sessions on human trafficking;

   vii. conducting audits of training protocols; or

viii. providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

g. Defendants are in an actual and/or apparent agency relationship with its Motel 6 staff offering public lodging services. This agency relationship was created and is maintained through Defendants' exercise of an ongoing and systemic right of control over its Motel 6 motels by Defendants'operations, including the means and methods of how Motel 6 motels conduct daily business including:

i. hosting online bookings on Defendants' domain;

ii. requiring Motel 6 motels to use Defendants' customer rewards program;

iii. setting parameters on employee wages;

iv. making employment decisions;

v. advertising for employment;

vi. sharing profits;

vii. standardized training methods for employees;

viii. building and maintaining the facility in a manner specified by Defendants;

ix. standardized or strict rules of operation;

x. regular inspection of the facility and operation by Defendants;

xi. fixing prices; or

xii. other actions that deprive Motel 6 motels of any independence in their business operations.

h. Apparent agency also exists between Defendants and Motel 6 staff. Defendants hold out Motel 6 motels to the public as their direct alter-ego each possessing authority to act on the other's behalf.

i. Given Defendants' public statements on behalf of its brand and the control it assumed in educating, implementing, and directing its motels, Defendants breached its duties in the following ways:

i. Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

ii. Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

iii. Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

iv. Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

v. Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

vi. Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; or

vii. Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or

tracking performance indicators and key metrics on human trafficking prevention.

j. For years, Defendants have demonstrated willful blindness to the rampant sex trafficking occurring throughout its Motel 6 motels across the country. This entrenched apathy to the real risk of sex trafficking allowed the exploitation of Plaintiff at the Subject Motel 6 which forms the basis for this complaint.

    i. In July 2012, a man pled to federal criminal charges for recruiting a 16-year-old victim from a foster-care program then forcing her to meet customers for sex at a Studio 6 in Jacksonville, Florida, repeatedly renting rooms on the first and second floor.[7]

    ii. In August 2016, two traffickers are arrested after forcing a woman to meet an undercover officer for sex at a Studio 6 in Tulsa, Oklahoma.[8]

**C. THE SEX TRAFFICKING OF PLAINTIFF**

75. The facts alleged herein stem from the sex trafficking of Plaintiff at the Subject Motel 6. Plaintiff was trafficked by a trafficker by the nickname of Black.

76. Plaintiff was induced by force, fraud and coercion to engage in commercial sex acts at the Subject Motel 6. While victimized by her trafficker, Plaintiff was subject to rape, sexual abuse, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and false imprisonment at Subject Motel 6.

77. In August 2015, at the age of nineteen (19), Plaintiff met her trafficker at a hotel

---

[7] https://www.news4jax.com/news/2012/07/07/feds-man-recruited-foster-care-girls-for-prostitution/

[8] https://ktul.com/news/local/prostitution-sting-leads-to-two-human-trafficking-arrests-in-tulsa

at which she was staying in Seattle, Washington. Plaintiff and her trafficker exchanged phone numbers.

78. Thereafter, Plaintiff communicated with her trafficker that she wanted to see her sister that lived in Portland, Oregon. Plaintiff's trafficker offered and took Plaintiff to Portland, Oregon and, once in Portland, Oregon, began trafficking Plaintiff for sex with other men.

79. Under the control of her trafficker, Plaintiff was induced by force, fraud and coercion to engage in commercial sex acts at the Subject Motel 6 during each stay.

80. Plaintiff's trafficker would communicate with a potential buyer of sex acts. The potential buyer would come to the Subject Motel 6. Plaintiff was then forced to engage in sex acts with the potential buyer, which Plaintiff did against her will as she was threatened.

81. Plaintiff's trafficker would rent rooms at the Subject Motel 6 paying with U.S. currency.

82. From August 2015 to July 2016, Plaintiff and her trafficker stayed at the Subject Motel 6 four to five days at a time, weekly, for approximately nine months.

83. Plaintiff's trafficker controlled all of the calls from potential buyers and kept all of the money she earned as the potential buyers would have to pay the trafficker at the Subject Motel 6 before Plaintiff engaged in the sex acts.

84. The Subject Motel 6 was a property in which the trafficker knew well, the trafficker knew the staff well, and the trafficker either had a business relationship with the Subject Motel 6 staff or were being bribed to look the other way in the face of open and obvious signs of sex trafficking.

85. Plaintiff's trafficker and agents employed at the Subject Motel 6 received payment from the trafficker in exchange for being tipped off by agents of the Subject Motel 6 to

police activity at the Subject Motel 6 or in the immediate vicinity of the Subject Motel 6.

86. Staff at the Subject Motel 6 called Plaintiff's trafficker to notify the trafficker of police activity between six and either times.

87. Plaintiff's trafficker forced Plaintiff to immediately leave the Subject Motel 6 upon receiving a call from agents of the Subject Motel 6.

88. As a result, Plaintiff and Plaintiff's trafficker never had any interaction with or were arrested by law enforcement.

89. The Subject Motel 6 staff rented rooms to Plaintiff's trafficker in which Plaintiff was forced to engage in sex acts with potential buyers.

90. During these stays at the Subject Motel 6, Plaintiff's trafficker would check into the Subject Motel 6, obtain the rooms, communicated and negotiated with the potential buyers, and receive the money from the potential buyers before the sex acts.

91. Plaintiff was not allow to speak with the Subject Motel 6 staff or even look at the Subject Motel 6 staff or face physical violence from her trafficker.

92. After one instance of physical violence, Plaintiff was beaten to the point of having visible bruising and swollen eyes. Plaintiff went to the front desk of the Subject Motel 6 begging for help.

93. The front desk staff at the Subject Motel 6 told Plaintiff they could not help her, pushed Plaintiff out of the door, and locked the door behind Plaintiff.

94. While staying at the Subject Motel 6 during the approximately nine month period, there was lots of human traffic in and out of the rented room from male individuals who were clearly not the individuals who reserved the rooms for the Subject Motel 6 staff to notice.

95. While staying at the Subject Motel 6 during the approximately nine month period,

there was a clear pattern of control Plaintiff's trafficker had over Plaintiff for the Subject Motel 6 staff to notice, including not being allowed to interact with the Subject Motel 6 staff and to being allowed to even look at the Subject Motel 6 staff.

96. While staying at the Subject Motel 6 during the approximately nine month period, there many instances of numerous towel and bedding requests to the Subject Motel 6 staff, and the trash cans in the rooms would be filled with used condoms, condom wrappers and other sexual items.

97. Plaintiff was forced to engage in approximately five (5) sex acts per day. If Plaintiff did not produce enough money per night, Plaintiff's trafficker would be physically violent with her, intimidate her and threaten her, causing Plaintiff significant fear and emotional turmoil.

98. Plaintiff remained under continuous control of her trafficker from August 2015 through July 2016 when she broke free from her trafficker and fled.

99. Prior to, during, and following Plaintiff's trafficking at the Subject Motel 6 described herein, Defendants had actual and/or constructive notice of prostitution, loitering, and/or general safety concerns at the Subject Motel 6, including, but not limited to, video surveillance of their motel. Defendants consistently failed to take any actions to curtail these activities.

100. Had Defendants been paying attention to the activities being conducted at the Subject Motel 6 property, and the apparent red flags outlined above, it would have been impossible for them not to notice the victimization of Plaintiff.

### D. THE DEFENDANTS FACILITATED THE TRAFFICKING OF PLAINITFF

101. Defendants actively participated in sex trafficking of Plaintiff by acting as a

"look out" for Plaintiff's trafficker.

102. Defendants profited from the sex trafficking of Plaintiff and knowingly or negligently aided, facilitated and engaged with Plaintiff's trafficker in the sex trafficking venture.

103. Defendants rented rooms to Plaintiff's trafficker, when they knew, or should have known, that they were using rooms at the Subject Motel 6 to imprison Plaintiff, physically assault her, and subject her to repeated exploitation as they forced her into sexual servitude.

104. Plaintiff's trafficker use the money acquired from Plaintiff's sex trafficking occurring at the Subject Motel 6 to continue to rent room at the Motel 6 during the time period Plaintiff was sex trafficked at the Motel 6 in violation of the TVPRA.

105. Defendants knew, or should have known, that Plaintiff was being trafficked and that Defendants were knowingly benefiting financially from said exploitation, because Plaintiff's trafficker frequented the Subject Motel 6, staying many times over the 2015 to 2016 time period.

106. Defendants knew, or should have known, that Plaintiff was being trafficked because Plaintiff constantly entertained male traffic at the rooms to appease her trafficker's expectations, behavior that indicated they were using the Subject Motel 6 for their illegal sex trafficking venture.

107. Defendants knew, or should have known, that signs of commercial sex activity in their motels was signs of sex trafficking as the definition of sex trafficking in the TVPRA incorporates the definition of a commercial sex act. *See* 18 U.S.C. 1591(a)(1).

108. Defendants participated and facilitated in this illegal endeavor by knowingly or negligently providing lodging to Plaintiff's trafficker in which to harbor Plaintiff while she was

sexually trafficked.

109. Defendants participated and facilitated in this illegal endeavor through its staff at the Motel 6 providing rooms to Plaintiff's trafficker to exploit Plaintiff to engage in commercial sex acts through force, fraud and coercion in violation of the TVPRA.

110. The G6 Defendants facilitated the sex trafficking of Plaintiff at the Subject Motel 6 by retaining control over the brand standards of any G6 motel property, including adopting and enforcing policies regarding the training, identification, reporting and monitoring of sex trafficking at their G6 brand properties.

111. The G6 Defendants facilitated the sex trafficking of Plaintiff at the Subject Motel 6 by retaining control over the policies regarding the reporting of sex trafficking and sharing of information with law enforcement.

112. The G6 Defendants facilitated the sex trafficking of Plaintiff at the Subject Motel 6 by retaining control over the internet service policy at the Subject Motel.

113. Franchisee Defendant facilitated the sex trafficking of Plaintiff at the Subject Motel 6 by inadequate training of its staff relating to identification and enforcement of standards regarding sex trafficking, inadequate reporting standards regarding sex trafficking, providing protection for Plaintiff's trafficker from law enforcement, and allowing Plaintiff's trafficker to force Plaintiff to engage in sex acts for value without fear of interference from the Subject Motel 6 staff.

114. Despite having actual and constructive knowledge of continuous sex trafficking at their motel properties, including the Motel 6, Defendants continued to profit from the sex trafficking of Plaintiff through the rentals of rooms at the Motel 6, and by developing and maintaining a business model which attracted and fostered the commercial sex market for

trafficker and buyers alike.

115. Defendants enjoyed the steady stream of income that sex trafficker bring to their budget level motels, including the Subject Motel 6.

116. Despite having actual and constructive knowledge of continuous sex trafficking at their motel properties, including the Subject Motel 6, Defendants continued to rent rooms to Plaintiff's trafficker.

117. Defendants had the opportunity to stop Plaintiff's trafficker and offenders like them from victimizing Plaintiff and others like her. Instead, Defendants failed to take reasonable measures to stop sex trafficking from occurring at the Subject Motel 6.

118. Defendants failed to take any steps to alert the authorities, properly intervene in the sex trafficking conduct, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their properties, including the Subject Motel 6.

119. Defendants maintained their deficiencies to maximize profits by:

a. Reducing the cost of training employees and managers of how to spot the signs of human trafficking and sexual exploitation and what steps to take;

b. Not refusing room rentals, or reporting guests to law enforcement, in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex trafficker or buyers;

c. Lowering security costs by not having proper security measures, including, but not limited to, employing qualified security officers to actively combat human trafficking and sexual exploitation;

120. As a direct and proximate result of these egregious practices on the part of the Defendants, Plaintiff has been permanently injured and damaged physically, emotionally,

psychologically, and financially.

## CAUSES OF ACTION

### A. COUNT ONE – Beneficiary Liability Claim Under 18 U.S.C § 1595 (Against All Defendants)

121. Plaintiff incorporates each foregoing allegation.

122. Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591 and 18 U.S.C. § 1595, and is therefore entitled to bring a civil action under the beneficiary liability theory in 18 U.S.C. § 1595(a).

123. Plaintiff brings a beneficiary liability theory claim against Defendants under 18 U.S.C. § 1595(a) for knowingly benefitting financially from a venture that they knew, or at the very least should have known, to be engaged in the sex trafficking of Plaintiff in violation of 18 U.S.C. § 1591(a).

124. Defendants acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595 as Defendants had a statutory obligation not to benefit financially from a venture that they knew, or should have known, to engage in violations of 18 U.S.C. § 1591(a).

125. Defendants acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595 as Defendants benefitted financially from the rentals of rooms at the Subject Motel 6 where Plaintiff was forced to engage in sex acts, and by developing and maintaining a business model which attracted and fostered the commercial sex market for trafficker and buyers alike.

126. Defendants acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595 as Defendants knew or should have

known Plaintiff and her trafficker engaged in acts in violation of 18 U.S.C. § 1591(a) as a result of open and obvious signs of sex trafficking present on the Subject Motel 6 property when Plaintiff and her trafficker booked rooms at the Subject Motel 6.

127. At all relevant times, Defendants breached this duty by participating in, and facilitating, the harboring and providing of Plaintiff for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and commissions.

128. Defendants' statutory violation of 18 U.S.C. § 1595 operated to cause Plaintiff to suffer substantial physical and psychological injuries and damages as the result of being trafficked and sexually exploited at Defendants' Subject Motel 6 in violation of 18 U.S.C. § 1591(a).

129. Plaintiff has suffered substantial physical and psychological injuries and damages as the result of being trafficked and sexually exploited at Defendants' Subject Motel 6 in violation of 18 U.S.C. § 1591(a).

### B. COUNT TWO – Vicarious Liability for Violations of the TVPRA (Against All Defendants)

130. Plaintiff incorporates each foregoing allegation.

131. Each Defendant is vicariously liable for the acts, omissions, failures and knowledge of all the other Defendants, as agents, alter egos and representatives of each other.

132. Each Defendant is vicariously liable for the acts, omissions, failures and knowledge of all the other Defendants, as parties to a franchise agreement for the ownership, operation, control, management and supervision of the Subject Motel 6.

133. The G6 Defendants are vicariously liable for the acts, omissions, failures and

knowledge of the Franchisee Defendant and the Subject Motel 6 staff, as agents and representatives of the G6 Defendants.

134. The G6 Defendants are vicariously liable for the TVPRA violations of Franchisee Defendant, as agents and representatives of the G6 Defendants.

135. The Franchisee Defendant is vicariously liable for the TVPRA violations of the G6 Defendants, as agents and representatives of the G6 Defendants.

136. Through the acts, omissions, failures and knowledge alleged in the Complaint, the G6 Defendants exercised regular and systematic day-to-day control over the manner in which the Franchisee Defendant operated the Subject Motel 6.

137. The G6 Defendants exercised regular and systematic day-to-day control over the manner in which the Franchisee Defendant operated the Subject Motel 6 by subjecting Franchisee Defendant to detailed brand standards and requirements regarding the operation of the Subject Motel 6 through their franchise agreement and other policies and protocols required by the G6 Defendants.

138. The G6 Defendants exercised regular and systematic day-to-day control over the manner in which the Franchisee Defendant operated the Subject Motel 6 by subjecting Franchisee Defendant to G6 brand training to operate the Subject Motel 6, requiring specific software and programs to operate the Subject Motel 6, requiring inspections and quality control of the Subject Motel 6, and record keeping requirements to operate the Subject Motel 6.

139. The G6 Defendants exercised regular and systematic day-to-day control over the manner in which the Franchisee Defendant operated the Subject Motel 6 by controlling all the guest information, controlling all the guest payment information, and maintaining a central reservation system.

140. As a direct and proximate result of the foregoing, Plaintiff suffered substantial physical and psychological injuries and damages as the result of being trafficked and sexually exploited at Defendants' Subject Motel 6 in violation of 18 U.S.C. § 1591(a).

## DAMAGES

141. Plaintiff incorporates each foregoing allegation.

142. Defendants' acts and omissions, individually and collectively, caused Plaintiff to suffer damages and injuries.

143. Defendants are jointly and severally liable for all past and future damages sustained by Plaintiff.

144. Defendants' inaction and failures by their agents, servants, staff, and employees to timely and properly prevent the sex trafficking of Plaintiff or timely intervene regarding same was a proximate and substantial factor in causing Plaintiff's injuries and damages.

145. As a direct and proximate result of Defendants' inaction, enabling, and multiple failures to act or establish anti-trafficking measures, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendants' Subject Motel 6 in violation of the TVPRA.

146. As a direct and proximate result of Defendants' inaction, enabling, and multiple failures to act or establish anti-trafficking measures, Plaintiff suffered, and will continue to suffer, substantial economic, physical, mental, emotional, psychiatric, and psychological injuries as the result of being trafficked and sexually exploited at the Subject Motel 6 in violation of 18 U.S.C. § 1591.

**PRAYER FOR RELIEF**

WHEREFORE, on the basis of the foregoing, Plaintiff demands judgment and an award damages to Plaintiff in an amount which will effectively prevent other similarly caused acts and adequately reflects the enormity of the Defendants' wrongs and injuries to Plaintiff due to the Defendants' faulty conduct, including but not limited to:

a. All available compensatory damages for the described losses with respect to each cause of action;

b. past and future medical expenses, as well as the costs associated with past and future life care;

c. past and future lost wages and loss of earning capacity;

d. past and future emotional distress;

e. consequential and/or special damages;

f. all available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g. punitive damages with respect to each cause of action;

h. reasonable and recoverable attorneys' fees;

i. costs of this action; and

j. pre-judgment and all other interest recoverable

Further, Plaintiff requests that the Court enter judgment consistent with the jury's verdict, and prays for any other damages and equitable relief the Court or jury deems appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable in this civil action.

Dated: June 29, 2026

Respectfully submitted,

*Jason Bryd*
Jason Byrd, Esq.
**BYRD RAMSEY**
6280 Delaware Street, Suite No. C
Beaumont, TX 77706
Telephone: (409) 202-2020
Email: jason@byrdramsey.com

Jaime M. Farrell, Esq.
**SLATER SLATER SCHULMAN LLP**
488 Madison Avenue, Floor No. 20
New York, NY 10022
Telephone: (631) 420-9300, Ext. 420
Email: jfarrell@sssfirm.com
*Pro Hac Vice Admission Request Forthcoming*

*Attorneys for Plaintiff*